Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. JORGE GARCIA

EXHIBIT

2

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

September 10, 2020

Mr. Jorge Garcia

RE: Long Term Disability (LTD) Benefits
Charter Communications, Inc.
Claim #: 9734661

Dear Mr. Jorge Garcia:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond June 16, 2020.

**Initial Claim Decision**

You submitted a claim for your absence from work as of August 17, 2019, as a result of due to injuries sustained in a pedestrian versus motor vehicle accident. LTD benefits were approved from February 17, 2020 through June 16, 2020. Benefits beyond June 16, 2020 were denied as the evaluation concluded there was insufficient medical evidence to support you remained disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated July 27, 2020. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information: "*Office treatment notes, diagnostic test results, prescribed medications, procedure reports, exam findings, and specific restrictions/limitations given beyond June 16, 2020, that support your inability to perform one or more of the material and substantial duties of your Own Occupation.*"

**Appeal**

We received your letter of appeal on July 27, 2020. In your letter you indicated you would like to appeal the decision from Dr. Tejan. You indicated he states in the notes that your only complaint is your middle finger. You indicated you cannot turn your wrist and advised him you have sensitivity and delayed movement of your left hand as well. You stated you can walk small distances and walk at very slow pace as this causes pain in both of your knees. You indicated you have a slight limp and insecurities when walking. You stated the doctor states you can carry up to 100 lbs, however, you cannot even tie your shoes by yourself. You indicated that you need this to be reconsidered ASAP as this decision has made you very anxious and stressed out. You indicated it is not your fault you

were hit by a car and it is not your fault you have not recovered fully.

No additional medical documentation was submitted with your appeal.

During a telephone call on July 30, 2020, you confirmed that you had submitted all of the information you wished to have considered in the appeal review of your claim.

This appeal review and analysis considered all the medical and claim documentation contained in your Long Term Disability administrative record, whether or not specifically referenced in this document.

**Appeal Evaluation**

During the claim evaluation of ongoing benefits, your claim was reviewed by Dr. Wade Penny, an independent physician Board Certified in Orthopedic Surgery. Following a complete review of your file, Dr. Penny indicated the medical records support the primary impairing diagnoses are right tibial plateau fracture, and left distal radius fracture with malunion. However, Dr. Penny concluded the available medical evidence supports your ability to work within the following restrictions and limitations from March 30, 2020 forward: *Exerting up to 100 pounds of force occasionally to lift and carry. Sitting, standing, and/or walking constantly. Frequent handling and fingering with the left upper extremity. Unrestricted walking, bending, reaching, gripping, and right upper extremity use.*

As of March 30, 2020, Dr. Penny noted you were over 7 months from your injuries and over 4 months from hardware removal procedures, and well beyond the expected interval of convalescence for return to unrestricted functional capacity. Dr. Penny indicated the restrictions and limitations noted above are consistent with those recommended by your provider, Dr. Tejan on July 09, 2020, with a last treatment date of May 29, 2020, and no indication of additional medical evidence having been considered.

Further Dr. Penny stated,

> *…Dr. Tejan initially indicated the claimant could return to work 4-6 weeks beyond 12/19/19, restrictions and limitations were extended for one month on 3/30/20 based upon the claimant's statement he did not want to go back to work, and there were no significant changes in exam findings or the intensity of treatment between 3/30/20 and 5/29/20. As such, there is no compelling rationale supporting the claimant's inability to return to functional capacity as early as 3/30/20.*
>
> *While residual impairment due to malunion of the left distal radius fracture with distal radioulnar joint malalignment was considered; the nondominant hand was involved, records did not indicate the magnitude of the malunion and up to moderate deformity can be welltolerated, the claimant refused further treatment including corrective osteotomy, only mild restriction of wrist flexion and extension was noted during the physical therapy assessment on 1/29/20, on 1/29/20 there was only slight restriction of finger extension and only minimal difficulty with fine motor/grasp/pull/push, mean left grip/pitch strength on 1/9/20 was diminished compared to the right at 15 pounds but was improved to +3 and 4/5 since 12/17/19, ongoing improvement in strength and function would be expected with*

*continued therapy that reportedly extended through the end of March, findings of significant but unquantified wrist stiffness on 3/30/20 and 5/29/20 were inconsistent with the therapy records from 1/29/20 noting active wrist flexion and extension of 55° and almost full passive motion, supination was almost normal at 75°, there was substantial difference between active and passive wrist motion testing in therapy suggesting effort based findings, OVNs on 3/30/20 in 5/29/20 noted less than full flexion of the left hand middle finger but the ability to make a fist, and the orthopedic OVN of 5/29/20 did not recommend continued therapy or other treatment for the left upper extremity.*

*While records contained intermittent reference to a non-union of left wrist, these records were inconsistent with; findings on the most recent left wrist x-rays that did not indicate a nonunion, the absence of treatment recommendations for a nonunion, and the level of functional capacity recommended by the AP on 7/9/20.*

*Other file evidence that is inconsistent with the claimant's reported level of functional impairment includes the following:*

*Despite having x-ray findings of healed tibial plateau fractures and treatment recommendations for weight-bearing as tolerated as of 12/11/19, the claimant presented to his 1/10/20 office visit in a wheelchair.*

*The AP initially anticipated a return to work by 1/22/19, and the reported reasons for subsequent extensions of work releases included; the claimant not wanting to go back to work on 2/24/20 until completing 3 more weeks of therapy, which could have been pursued outside work hours, and, on 3/30/20, extending the release for one additional month because the claimant did not want to return to work.*

*While the claimant requested ongoing work absence to complete physical therapy, there were no records documenting PT attendance beyond 1/29/20, including the visit requested by the AP on 3/30/22 measure and report wrist motion.*

*There was no record indicating recommendations, or refills, for prescription strength pain medication beyond 9/2019.*

*The level of impairment reported in the claimant's activities questionnaire of 7/2/20 was inconsistent with the degree of symptoms documented in recent orthopedic records, and with the limited intensity of contemporaneous treatment.*

*While the claimant sustained a hairline fracture of the left tibial plateau on 8/17/19; treatment was nonsurgical, as of 11/6/19 the claimant denied left lower extremity symptoms, as of 12/11/19 the fracture was healed as would be expected after 3 months of treatment, there were no records indicating other injuries or pathological conditions in the left knee, and there was no pursuit of ongoing treatment for left knee symptoms.*

On August 06, 2020, a letter was received from Dr. Joseph Moi Tejan which indicated he performed a hardware removal of plates and screws of your left wrist, and removal of prominent screw of the right knee on November 26, 2019. Dr. Tejan indicated you will need an evaluation by a disability doctor and a functional capacity evaluation by the appropriate specialist. Dr. Tejan noted you may also need work hardening depending on the result of the functional evaluation. He stated this will

ensure you are ready to return to your previous or new employment. Dr. Tejan stated a “Restrictions Form” was sent stating you are able to return to your regular duty on “Heavy Duty”; he stated this was an error. Dr. Tejan stated he suggests you consult with the appropriate specialists as he has discussed with you on a few occasions during your office visits.

During the review of your appeal, your claim was reviewed an additional review by Dr. Christopher Mahr, an independent Board Certified in Orthopedic Surgery. Dr. Mahr contacted your treating provider, Dr. Tejan to discuss your case. Below is a summary of the telephone contact with Dr. Tejan as documented by Dr. Mahr,

*TELECONFERENCE #3:*
*1) AP NAME: Dr. Joseph Moi Tejan*
*2) DATE: 8/12/2020*
*3) TIME: 2:44 PM CT*
*4) PERSON SPOKEN WITH: Dr. Joseph Moi Tejan*
*5) POSITION OF PERSON SPOKEN WITH: Provider*

*SUMMARY OF CONVERSATION: The provider stated that he had no opinion in regards to the claimant's restrictions and limitations as of 06/17/20. He felt that the claimant would have a disability and be functionally limited in regards to his left wrist due to the malunion and stiffness. In regards to the severity of the disability and amount the claimant was limited, he had no opinion. This reviewer asked him if the claimant could lift up to 100 pounds occasionally and he stated that he had no opinion if the claimant could lift 100 pounds occasionally. He recommended the claimant be evaluated by an occupational medicine specialist who could determine the claimant's disability with a functional capacity evaluation.*

Following a complete review of your file and discussion with Dr. Tejan, Dr. Mahr concluded the medical evidence does not support any diagnoses causing functional impairment from June 17, 2020 to the present. The clinical review noted you had a history of open reduction and internal fixation of the left distal radius and right tibial plateau fractures in August of 2019. Records indicated you followed-up with Dr. Tejan after moving back to Texas on November 06, 2019. You subsequently underwent a removal of the plate and screws of the left wrist and removal of the prominent screw in the right knee on November 26, 2019. You underwent physical therapy in January of 2020 and saw Dr. Tejan in the office postoperatively on February 24, 2020, March 30, 2020, and the last visit on May 29, 2020. At the last office visit on May 29, 2020, it is noted that you complained of decreased range of motion in regards to your left middle finger. You were noted to have stiffness of the wrist. A radiograph of the left wrist revealed a malunion. There were no complaints of pain in regards to your knees at that office visit. On March 30, 2020, it was noted that you were pleased with your progress and radiographs of the right knee revealed a healed tibial plateau fracture. The clinical review by Dr. Mahr indicated there was no medical evidence to support an impairment in regards to your bilateral knees after March 30, 2020. In regards to your left distal radius fracture there was a malunion, but Dr. Mahr indicated the degree of deformity was not described in the medical records. There was no recent medical documentation to support a functional impairment in the left wrist. The only physical exam finding at that last follow-up visit on May 29, 2020 in regards to the left wrist was slight decreased range of motion of the middle finger and stiffness of the wrist. Only mild restriction of wrist flexion and extension was noted in the physical therapy assessment on January 29, 2020. Further Dr. Mahr stated,

> *The medical evidence does not support a functional impairment that translates into restrictions and limitations. The claimant was characterized as being able to work in the heavy demand job level by his provider, Dr. Tejan on 07/09/20. Although, Dr. Tejan wrote on 08/06/20 that the 07/09/20 restrictions form stating the claimant could return to work regular-duty was an error. The claimant's bilateral tibial plateau fractures had healed and the claimant after 03/30/20 had no complaints in regards to knee pain with Dr. Tejan. The fractures had healed radiographically. There was no recent physical exam to support an impairment or restrictions and limitations in regards to the claimant's bilateral knees including range of motion and strength testing. In regards to the claimant's left distal radius fracture there was a malunion, but the degree of deformity was not described in the medical records. There was no recent medical documentation to support a functional impairment in the left wrist. The only physical exam finding in regards to the left wrist was slight decreased range of motion of the middle finger and stiffness of the wrist. Only mild restriction of wrist flexion and extension was noted in the physical therapy assessment on 01/29/20. There were no recent strength measurements in regards to the claimant's left upper extremity to support an impairment.*

On August 13, 2020, we sent you a letter which included a copy of the clinical review performed in connection with your request for appeal. You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of September 12, 2020.

We received a letter from you via email on August 13, 2020 in response to the clinical review completed in connection with your appeal. You indicated you disagree with the current medical review and decision as it stands now. You indicated that Dr Tejan provided a recent note indicating he had made a mistake in stating you were ready to go back to your current work. You indicated he also stated he would recommend you seek the opinion and help of a disability specialist to further evaluate your current physical condition. You indicated this mistake has created your current living situation and stress on your family life along with your physical pain. You reported you are in physical pain every day and also have a high level of anxiety and stress. You indicated you know this decision is wrong because you live in constant pain and are physical unable to perform the most basic of task. You stated you are not mentally or physically ready to perform your job.

Additionally, during a phone conversation on August 13, 2020, you reported you were recently seen by your primary care physician, Dr. Luis Reynoso. As discussed during the telephone conversation on August 13, 2020, a copy of the clinical review completed in connection with your appeal was sent to Dr. Reynoso for his review and comment. A response was requested by August 27, 2020.

A copy of your August 12, 2020 office visit note was received from Dr. Luis Reynoso's office. The note indicates you were seen for a rash to the upper body. The record indicates you complained of generalized anxiety disorder, rash on the right posterior trunk, knee pain, and decreased grip of the left hand. The physical exam of the cervical spine, thoracic spine, lumbar spine, pelvis, upper extremities and lower extremities was normal. You were assessed with generalized anxiety disorder and started on Lexapro 10mg. You were also referred to Dr. Cobos for bilateral knee pain and to Dr. Poulos for left hand pain. Lab work was also ordered and you were to follow up in 4 weeks.

Upon receipt of the additional documentation for your appeal, your file was referred for an addendum review by independent orthopedic surgery physician, Dr. Christopher Mahr. Dr. Mahr

concluded the additional information does not alter his prior assessment regarding your level of functional capacity. The clinical review indicated you saw Dr. Reynoso, MD on August 12, 2020. The medical records indicate your main complaints were a rash at that time. You also complained of right knee pain which was mild to moderate and left hand decreased grip strength. There were no objective findings contained in the documentation to support an impairment. It is noted you had a normal exam of the cervical spine, thoracic spine, lumbar spine, pelvis and upper and lower extremities.

Dr. Mahr attempted to reach Dr. Reynoso by phone to discuss your case, however, telephone contact with Dr. Reynoso was not successful.

In regards to your diagnosis of generalized anxiety disorder, the medical records do not provide any documentation of abnormalities on mental status examination or psychiatric testing to support you would be prevented from performing full-time work. The records do not provide evidence of any escalation of care, or more intense treatment which would not be expected if your reported symptoms were of a severe and impairing nature. Furthermore, the presence of anxiety with medication or therapy would not in and of itself support the need for restrictions and limitations. Any restrictions and limitations would depend upon the presence of corroborating mental status findings such as psychomotor agitation or retardation, deficits in grooming or eye contact, deficits in cognition, thought disorder, memory, concentration, intractable crying spells, or other such signs of functional impairment.

The additional information received with your appeal, including your statements and the information from your providers, has been considered. However, the additional information received on appeal does not provide any significant exam findings, or information regarding your diagnoses, treatment frequency, treatment plan or functional status to change the prior assessment.

It is important to note the ability to perform the duties of your occupation is dependent on the impairments, if any, that are supported by the medical documentation, not an individual's own assessment of functional capacity. Therefore, in the absence of sufficient medical documentation to support your inability to perform the activities consistent with those required to perform your occupation, you do not meet the definition of disability and we have determined that the denial of LTD benefits beyond June 16, 2020 is supported by the medical information contained in your claim file.

**Conclusion**

We conducted a thorough and independent review of your entire claim. In summary, we acknowledge that you may have continued to experience some symptoms associated with your condition. However, the information does not contain exam findings, or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation beyond June 16, 2020.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

***Disability Benefit***

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining*
*whether the Covered Person is Disabled, Liberty will not consider employment factors including, but*
*not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.*

**"*Disability*"** *or* **"*Disabled*"**, *with respect to Long Term Disability, means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

**"*Own Occupation*"**, *with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

**"*Material and Substantial Duties*"**, *with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

**"*Proof*"** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

***Discontinuation of the Long Term Disability Benefit***

*The Monthly Benefit will cease on the earliest of:*
…
*9. the date the Covered Person is no longer Disabled according to this policy;*
…

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Charter Communications, Inc. Group Disability Income Policy contains the below provision:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is December 08, 2023.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in the Charter Communications, Inc. LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Tawnya Valliere
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 15894
Secure Fax No.: (603) 422-7909